IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-HC-2104-D

| | | |
|---|---|---|
| JOSE GILARDO OJEDA-ORTIZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ALVIN W. KELLER, JR., Sec'y, | ) | |
| North Carolina Dep't of Corr., | ) | |
| | ) | |
| Respondent. | ) | |

Jose Gilardo Ojeda-Ortiz ("Ojeda-Ortiz" or "petitioner"), a state inmate, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 [D.E. 1]. On December 8, 2009, respondent filed a motion for summary judgment [D.E. 8]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Ojeda-Ortiz about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 10]. On December 17, 2009, Ojeda-Ortiz filed a response in opposition and moved for court-appointed counsel [D.E. 11]. On May 17, 2010, Ojeda-Ortiz filed a request for free copies of filed documents [D.E. 12]. For the reasons explained below, the court denies Ojeda-Ortiz's request for free copies of court filings and motion to appoint counsel [D.E. 11, 12] and grants respondent's motion for summary judgment [D.E. 8].

I.

Initially, the court addresses Ojeda-Ortiz's May 17, 2010 requests for documents [D.E. 12]. Ojeda-Ortiz states that on December 8, 2009, he received notice that respondent had filed a motion for summary judgment. Mot. for Documents 1. However, Ojeda-Ortiz claims that he did not receive

a copy of the motion and asks the court to provide a copy of the motion for summary judgment to enable him to prepare a response. Id.

Ojeda-Ortiz's claim that he did not receive a copy of the December 8, 2009 motion for summary judgment is not credible. On December 11, 2009, Ojeda-Ortiz responded to the motion for summary judgment. See Petr.'s Mem. Opp'n Mot. Summ. J. ("Mem. Opp'n") 4, 5. On December 17, 2009, the Clerk of Court received the response. See Mem. Opp'n 1. In his response, Ojeda-Ortiz does not claim that he had not received a copy of respondent's filing. See id. Instead, he explains why the court should deny summary judgment. See id. Although Ojeda-Ortiz may no longer have his copy of the motion for summary judgment and memorandum, the court rejects Ojeda-Ortiz's claim that he never received a copy.

A pro se litigant assumes responsibility for properly maintaining his legal records. If additional copies of court filings are required because of loss or destruction of documents, the Clerk of Court processes requests for a fee of fifty cents per page. See 28 U.S.C. § 1914 note (District Court Miscellaneous Fee Schedule). This fee is not waived for in forma pauperis litigants. See, e.g., In re Richard, 914 F.2d 1526, 1527 (6th Cir. 1990); Douglas v. Green, 327 F.2d 661, 662 (6th Cir. 1964) (per curiam); Daniel v. Craig, No. 5:07-CV-465, 2008 WL 644883, at *3 (S.D. W. Va. Mar. 7, 2008) (unpublished); Souser v. Robinson, No. 2:05-CV-481-RAJ, 2005 WL 6070214, at *1 (E.D. Va. Dec. 7, 2005) (unpublished); Fulgham v. Parker, No. 2:05-CV-401, 2005 WL 5545032, at *2 (E.D. Va. Nov. 10, 2005) (unpublished). Thus, the court denies Ojeda-Ortiz's request for a free copy of respondent's motion for summary judgment [D.E. 12].

In his December 17, 2009 letter to the Clerk of Court, Ojeda-Ortiz asks for the appointment of counsel. Mot. Appoint Counsel ¶ 3. Ojeda-Ortiz states that he is indigent, unfamiliar with the law, and lacks the ability to obtain counsel. Id.

2

No constitutional right to counsel exists in habeas corpus actions, see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), but the court may appoint counsel if it determines that "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). This action does not present legally complex issues, and petitioner has set forth his claims adequately. Thus, the interests of justice do not require the appointment of counsel. Accordingly, the court denies petitioner's motion to appoint counsel [D.E. 11].

The court next considers respondent's motion for summary judgment [D.E. 8]. Initially, the court describes the procedural history of Ojeda-Ortiz's case and post-conviction proceedings.

On January 8, 2007, a Wake County grand jury indicted Ojeda-Ortiz for trafficking in cocaine by possession (06CRS088432) and conspiracy to traffic cocaine by sale and delivery (06CRS088433). Respt.'s Mem. Supp. Mot. Summ. J. ("Mem. Supp."), Ex. 3 at 8–9 (Indictments). On April 16, 2007, a Wake County grand jury returned a superseding indictment on the conspiracy charge. Id. at 10 (Superseding Indictment).

On November 26, 2007, Ojeda-Ortiz appeared before Wake County Superior Court Judge Donald Jacobs at a plea hearing. Mem. Supp. 1. Respondent contends that Ojeda-Ortiz entered a valid guilty plea, and that the court continued sentencing to allow Ojeda-Ortiz to provide truthful information. See id. at 5–6. Ojeda-Ortiz, however, denies that he pleaded guilty. Pet. 5–6; but see id. at ¶ 6 (checking "guilty" as petitioner's plea).

On December 14, 2007, Wake County Superior Court Judge R. Allen Baddour, Jr., consolidated the convictions and sentenced Ojeda-Ortiz to 175 to 219 months' imprisonment. See Mem. Supp., Ex. 2. The maximum punishment on each count was 219 months. Id. Ex. 3 at 15. Ojeda-Ortiz gave oral notice of appeal. Id. at 3, 19–20. Assistant Public Defender Jeffrey Cutler represented Ojeda-Ortiz at the plea and sentencing hearings. Id. at 11.

3

Ojeda-Ortiz appealed to the North Carolina Court of Appeals. Pet. 2. Assistant Appellate Defender David W. Andrews represented Ojeda-Ortiz. Mem. Supp., Ex. 3 at 21, 26. On appeal, Ojeda-Ortiz argued that "the trial court erred" by "entering judgment" "contrary to North Carolina law and the facts of the case." Pet. ¶ 9. North Carolina moved to dismiss the appeal. Mem. Supp., Ex. 4. On July 9, 2008, the North Carolina Court of Appeals dismissed the appeal. Id. Ex. 5.

On July 20, 2008, Ojeda-Ortiz, proceeding pro se, filed a "petition for state writ of habeas corpus/and motion for appropriate relief" in the Wake County Superior Court. Id. Ex. 6. On November 7, 2008, the court denied and dismissed the motion. Id. Ex. 7.

On October 20, 2008, Ojeda-Ortiz signed a pro se petition for writ of certiorari alleging ineffective assistance of appellate counsel and filed it on December 4, 2008, in the North Carolina Court of Appeals. Id. Ex. 8. On December 18, 2008, the North Carolina Court of Appeals denied the petition. Id. Ex. 10.

On March 10, 2009, Ojeda-Ortiz refiled his "petition for state writ of habeas corpus/and motion for appropriate relief" in Wake County Superior Court. Id. Ex. 14; Pet. ¶ 11. Ojeda-Ortiz asserted that he had been denied a right to a jury trial, that the sentencing court lacked jurisdiction, that he received ineffective assistance of counsel, and that his punishment was cruel and unusual. Pet. ¶ 11(a).[1] On June 29, 2009, the court denied the motion for appropriate relief ("MAR"). Mem. Supp., Ex. 15.

On April 22, 2009, Ojeda-Ortiz filed a second pro se petition for writ of certiorari in the North Carolina Court of Appeals. Id. Ex. 11. Ojeda-Ortiz asked the court to the review the Wake County Superior Court order denying his state habeas petition/MAR. Id. On May 11, 2009, the

---

[1] Ojeda-Ortiz asserts the same grounds for relief in his section 2254 petition. See Pet. 5–10.

4

North Carolina Court of Appeals denied Ojeda-Ortiz's second petition for writ of certiorari. Id. Ex. 13.

On July 13, 2009, Ojeda-Ortiz filed a third pro se petition for writ of certiorari with the North Carolina Court of Appeals. Id. Ex. 16. Ojeda-Ortiz reiterated the claims raised in his unsuccessful MAR. Id. at 3–4; see Pet. ¶ 11(b).[2] On July 28, 2009, the court denied Ojeda-Ortiz's petition. Mem. Supp., Ex. 18.

On August 20, 2009, Ojeda-Ortiz filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254. See Pet. 1. Once again, Ojeda-Ortiz makes four claims: (1) that he was denied his right to a jury trial; (2) that the sentencing court lacked jurisdiction to sentence him; (3) that he received ineffective assistance of counsel; and, (4) that he has been subjected to cruel and unusual punishment. Id. at 5–10. Ojeda-Ortiz claims that he rejected the plea arrangement, refused to sign an agreement, and demanded a jury trial. Id. at 5. Thus, Ojeda-Ortiz alleges that he never pleaded guilty. Id. at 6. Ojeda-Ortiz asserts that the trial court erred by sentencing him without a guilty plea or conviction by a jury. Id. Ojeda-Ortiz also claims that his trial counsel failed him by allowing the court to impose a sentence without a guilty plea or conviction by a jury. Id. at 8. Additionally, Ojeda-Ortiz alleges that he has been subjected to cruel and unusual punishment through his incarceration at a maximum-security prison without a proper adjudication of guilt. Id. at 10.

On December 8, 2009, respondent filed a motion for summary judgment [D.E. 8]. Respondent argues that Ojeda-Ortiz knowingly, intelligently, and voluntarily pleaded guilty to both

---

[2]In his third pro se petition for writ of certiorari, Ojeda-Ortiz states that his "conviction [was] obtained by [a] plea of guilty that was entered into the record without his consent." Mem. Supp., Ex. 16 at 5. Ojeda-Ortiz alleged that on December 14, 2007, he was "confused as to what the contents of the offered agreement was and therefore refused to agree to the agreement." Id. at 6. Ojeda-Ortiz complained that Judge Baddour sentenced him "as if a valid guilty plea had been made." Id.

5

counts, even though he did not sign the Transcript of Plea form. Mem. Supp. 3.³ According to respondent, the stenographic transcript of the proceedings clearly demonstrates that petitioner's guilty plea was valid. Id. Thus, respondent maintains that Ojeda-Ortiz's claims lack merit and asks the court to deny relief under section 2254. See id. at 8.

In considering respondent's motion for summary judgment, the court views the evidence in the light most favorable to petitioner and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the court need not accept petitioner's "legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (quotations omitted) (discussing Rule 12(b)(6) of the Federal Rules of Civil Procedure); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision

---

³Respondent offers no explanation for the missing signature on the Transcript of Plea form and refers to it as an "irregularity in the paper record." Mem. Supp. 4.

"involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.

The state court is not required to "cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one" and the federal habeas court is not required to "offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Ojeda-Ortiz claims that he rejected a plea arrangement and demanded a jury trial. Pet. 5. Ojeda-Ortiz asserts that he "does not understand English and did not trust his attorney or the alleged interpreter and therefore he would not plea[d] guilty." Mem. Opp'n ¶ 8. Ojeda-Ortiz also alleges that he refused to plead guilty "mainly because he maintains that he did not commit this crime." Id. ¶ 9. According to Ojeda-Ortiz, the court nevertheless entered judgment and imposed a sentence. Pet. 5–6. Ojeda-Ortiz states that "the trial court cannot arbitrarily find the defendant guilty and impose a sentence, simply because the person doesn't understand the nature of the proceeding." Mem. Opp'n ¶ 11.

Ojeda-Ortiz denies that he pleaded guilty and relies on the Transcript of Plea to support his position. Pet. 5; see Mem. Supp., Ex. 3 at 13–16. The Transcript of Plea reflects that Ojeda-Ortiz knowingly entered a plea of guilty in open court before Judge Jacobs after his attorney explained the nature of the charges and possible defenses. Mem. Supp., Ex. 3 at 13. In addition, the Transcript

of Plea noted that Ojeda-Ortiz acknowledged that he was in fact guilty, understood that he waived his right to a jury trial, and freely agreed to the plea. Id. at 13–14. The November 26, 2007 Transcript of Plea contains the signatures of Ojeda-Ortiz's attorney, the prosecutor, the deputy clerk, and Judge Jacobs. Id. at 14. Ojeda-Ortiz's signature is missing. Id.

Although respondent acknowledges that Ojeda-Ortiz did not sign the Transcript of Plea form, respondent contends that Ojeda-Ortiz entered a valid guilty plea, and cites the stenographic record of the court's proceedings. See Mem. Supp. 3–7. Respondent attached a copy of the stenographic transcript of the November 26, 2007 plea hearing and the December 14, 2007 sentencing hearing in support of its motion for summary judgment. See Mem. Supp., Ex. 1 (Plea Hr'g Tr.) ("Ex. 1 "); id. Ex. 2 (Sentencing Hr'g Tr.) ("Ex. 2 ").

The stenographic record of the November 26, 2007 hearing establishes that Ojeda-Ortiz, his attorney, Jeffrey Cutler, and the assistant district attorney appeared before Judge Jacobs for the purpose of entering a plea. Ex. 1 at 1–2. The stenographic transcript reflects that Ojeda-Ortiz did not understand English, but a sworn, certified interpreter translated the proceedings. Id. at 2:10–15, 3:1–6, 3:19–25.

During the plea hearing, Ojeda-Ortiz acknowledged that he had a right to remain silent and that any statement he made may be used against him. Id. at 4:1–4. Ojeda-Ortiz denied being under the influence of alcohol, drugs, narcotics, pills, or any other intoxicants and stated that he had last used or consumed any such substance a year-and-a-half previously. Id. at 4:8–14. Ojeda-Ortiz stated that his attorney had explained the charges to him and he understood the nature and every element of the charges. Id. at 4:15–19. Ojeda-Ortiz also confirmed that he and his attorney had discussed possible defenses. Id. at 4:20–22. Ojeda-Ortiz informed the court that he was satisfied with his attorney's legal services. Id. at 4:23–25. Furthermore, Ojeda-Ortiz stated that he understood that

8

he had a right to plead not guilty and to be tried by a jury. Id. at 5:1–3. Ojeda-Ortiz also understood that at such a trial he would have a right to confront and cross-examine any witnesses against him. Id. at 5:4–7.

In response to Judge Jacobs, Ojeda-Ortiz indicated that he understood that he was pleading to a drug trafficking offense that has a mandatory minimum sentence. Id. at 5:8–11. Ojeda-Ortiz also understood that, by his plea, he was giving up the valuable constitutional right to a jury trial. Id. at 5:12–25, 6:1. Ojeda-Ortiz acknowledged that he understood that if he were not a United States citizen, his guilty plea may result in deportation, exclusion from admission to the United States, or denial of his naturalization. Id. at 6:2–8. In addition, the court asked Ojeda-Ortiz:

> Do you understand that you are pleading guilty to charges of trafficking in cocaine by possession, 90-95(h)(3) offense, Class I offense; and conspiracy to traffic in cocaine, 90-95(h)(3) offense, Class D, both of which under 90-98, with a maximum prison exposure of each offense of 219 months in prison, for a total of 43 months, $250,000 fine, minimum offense 175 months?
>
> And do you now personally plead guilty to each charge?

Id. at 6:16–25. Ojeda-Ortiz responded "yes" and stated that he was "in fact guilty of each charge." Id. at 7:1–4.

Ojeda-Ortiz informed the court that he had a plea arrangement. Id. at 7:5–8. Ojeda-Ortiz agreed that the correct and full plea arrangement provided that his charges were to be consolidated for one sentence, with sentencing to be continued until December 3, 2007, to allow him to provide truthful information and nothing more. Id. at 7:9–14, 7:22–25, 8:1. Ojeda-Ortiz confirmed that no promises had been made to him, other than those contained in the plea arrangement as described by the court, and he had not been threatened in any way to cause him to enter his plea against his wishes. Id. at 7:17–21. Ojeda-Ortiz agreed that there were facts to support his plea and consented to a factual summary of the evidence. Id. at 8:2–8. Ojeda-Ortiz denied having any questions about

9

what was said or anything else connected to his case. Id. at 8:9–12. The prosecutor then offered a factual basis for the plea. Id. at 8:16–10:14. Petitioner's attorney offered no objection to the prosecutor's factual summary. Id. at 10:15–17, 11:2–5.

The court then stated:

> I find there is a factual basis for the plea. The defendant is satisfied with his lawyer's legal services. He is competent to stand trial. The plea is the informed choice, made freely, voluntarily, and understandingly. It is ordered recorded. And the prayer for judgment is continued until Monday, December 3, 2007.

Id. at 11:6–12. Ojeda-Ortiz and his attorney did not object or bring any other issue before the court. Id. at 11:13–16.

On November 26, 2007, Judge Jacobs signed a "Judgment/Order or Other Disposition" noting that Ojeda-Ortiz "was arraigned in open court & entered pleas of guilty" to trafficking in cocaine by possession (07CRS088432) and conspiracy to traffic in cocaine (07CRS088433). See Mem. Supp., Ex. 3 at 12. In addition, the court continued the prayer for judgment to allow Ojeda-Ortiz to provide truthful information. See id. at 12, 15.

The stenographic transcript of petitioner's December 14, 2007 sentencing hearing confirms that Ojeda-Ortiz, Attorney Cutler, and the assistant district attorney appeared before Judge Baddour. Ex. 2 (title page); id. at 1. Once again, a sworn interpreter translated the proceedings for Ojeda-Ortiz. Id. at 1. The prosecutor advised the court that Ojeda-Ortiz had pleaded guilty on two drug counts on November 26, 2007, and offered a factual summary of the case. Id. at 1:20–25, 2:1–6, 2:13–4:14. The prosecutor also stated that Ojeda-Ortiz's attorney had requested an opportunity for his client to provide information. Id. at 4:7–14. Ojeda-Ortiz's attorney then called a detective as a witness and argued for Ojeda-Ortiz's substantial assistance for sentencing purposes. See id. at 4:21–11:16, 16:7–21, 19:1–24:10.

10

Upon invitation from the court, Ojeda-Ortiz spoke. Id. at 24:14-20, 25:11-12. Ojeda-Ortiz clarified a misinterpretation involving the number and nature of telephone calls he had with the informant before his arrest. Id. at 24:15-20. Later, Ojeda-Ortiz informed the court that he had nothing more to add. Id. at 25:11-12. During his sentencing hearing, Ojeda-Ortiz never told the court that he had rejected the plea arrangement, did not enter a guilty plea, or demanded a jury trial. In addition, Ojeda-Ortiz failed to state that he did not understand the basis for the sentencing hearing without a guilty plea or ask to withdraw his guilty plea. Ojeda-Ortiz never stated that he did not understand the nature of the proceedings on November 26, 2007 or December 14, 2007, that he had not committed the crimes as charged, or that he did not trust his attorney or the interpreter.

On December 14, 2007, Judge Baddour entered the Judgment and Commitment Active Punishment Felony (Structured Sentencing) ("Judgment"). Mem. Supp., Ex. 3 at 17-18. The judgment did not indicate whether Ojeda-Ortiz pleaded guilty or no contest to, or was found guilty by a jury of, the drug trafficking offenses. Id. at 17. The court sentenced Ojeda-Ortiz to a minimum term of 175 months and a maximum term of 219 months and imposed a $250,000.00 fine. Id. at 17-18.

The record demonstrates that Ojeda-Ortiz entered a knowing and voluntary guilty plea in open court with competent counsel; therefore, he is not entitled to habeas relief. See, e.g., 28 U.S.C. § 2254(e)(1); Park v. Raley, 506 U.S. 20, 30 (1992); Boykin v. Alabama, 395 U.S. 238, 244 (1969). Absent extraordinary circumstances, a defendant's solemn in-court representations are deemed conclusive. See, e.g., States v. Hyde, 520 U.S. 670, 672-80 (1997); Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Tollett v. Henderson, 411 U.S. 258, 266-68 (1973); Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984); Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 171 (4th Cir. 1981). In opposition to his sworn statements in open court, Ojeda-Ortiz relies exclusively on his

missing signature from the Transcript of Plea form to demonstrate that he did not plead guilty.

The absence of Ojeda-Ortiz's signature from the Transcript of Plea form does not violate state or federal law. In North Carolina, "[i]f the plea arrangement has been reduced to writing, it must be made a part of the record; otherwise the judge must require that the terms of the arrangement be stated for the record and that the assent of the defendant, his counsel, and the prosecutor be recorded." N.C. Gen. Stat. § 15A-1026 (emphases added). Ojeda-Ortiz's attorney, the prosecutor, and the judge signed the Transcript of Plea form. See Mem. Supp., Ex. 3 at 14. Ojeda-Ortiz did not sign the Transcript of Plea form, but he told the court that he had a plea arrangement. Ex. 1 at 7:5–8. The court stated the terms of the plea arrangement, and Ojeda-Ortiz agreed that the terms described were correct and constituted the full plea arrangement. Id. at 7:9–25, 8:1. The proceedings were recorded and transcribed. Thus, the court accepted Ojeda-Ortiz's guilty plea in compliance with state law. See N.C. Gen. Stat. §§ 15A-1022, 15A-1026.

As for federal law, the verbatim record of the plea proceedings makes clear that Ojeda-Ortiz's guilty plea was knowingly and voluntarily entered with the advice of competent counsel. Thus, the state court's finding that petitioner's guilty plea was an "informed choice, made freely, voluntarily, and understandingly" was valid, and the decision to affirm Ojeda-Ortiz's conviction was not contrary to clearly established federal law. Ex. 1 at 11:6–12; see, e.g., Park, 506 U.S. at 30. Similarly, the state court's decision did not involve an unreasonable application of clearly established federal law. See, e.g., Park, 506 U.S. at 30. Accordingly, the court rejects Ojeda-Ortiz's claims and grants respondent's motion for summary judgment [D.E. 8].

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Having determined petitioner is not entitled to relief and respondent is entitled to

12

Case 5:09-hc-02104-D   Document 13   Filed 07/14/10   Page 12 of 14

summary judgment, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the district court has adjudicated and denied petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. See Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484–85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds that reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability.

13

II.

In sum, the court DENIES petitioner's requests for a free copy of the documents and to appoint counsel [D.E. 11, 12], GRANTS respondent's motion for summary judgment [D.E. 8], and DISMISSES petitioner's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. The Clerk of Court is DIRECTED to close the case.

SO ORDERED. This 14 day of July 2010.

JAMES C. DEVER III
United States District Judge

14

Case 5:09-hc-02104-D   Document 13   Filed 07/14/10   Page 14 of 14